## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARCUS ORLANDO TAITE,** | ) | |
| **AIS #00180664,** | ) | |
|     **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 13-00322-CG-N**[1] |
| | ) | |
| **CYNTHIA STEWART, Warden,** | ) | |
| **Fountain Correctional Facility,** | ) | |
|     **Respondent.** | ) | |

## REPORT AND RECOMMENDATIONS

Pending before the Court is the operative Petition for Writ of Habeas Corpus by a Person in State Custody under 28 U.S.C. § 2254 (Doc. 27) filed by Petitioner Marcus Orlando Taite, an Alabama prisoner proceeding *pro se*.[2] The Respondent, through the Office of the Attorney General of Alabama, has filed an Answer (Doc. 62) to the petition, along with supplements as ordered (Docs. 73, 83).

Under S.D. Ala. GenLR 72.2(b), Taite's habeas petition has been referred to the undersigned Magistrate Judge for entry of a recommendation as to the appropriate disposition, in accordance with 28 U.S.C. § 636(b)(1)(B)-(C), Rule 8(b) of the Rules Governing § 2254 Cases in the United States District Courts, and S.D.

---

[1] This action has been consolidated with S.D. Ala. Case Nos. 1:14-cv-557-CG-C and 1:15-cv-336-CG-N. The filings from those cases do not affect this Report and Recommendation, as they largely repeat claims Taite has already raised in this action.

[2] Though styled as a petition brought under 28 U.S.C. § 2241, the undersigned has determined, and given notice of same to Taite, "that, in substance, [Taite's] claim appears to arrive under 28 U.S.C. § 2254 in that he's attacking his conviction in state court." (Doc. 34 at 1). *See Means v. Alabama*, 209 F.3d 1241, 1242 (11th Cir. 2000) (per curiam) ("[F]ederal courts must look beyond the labels of motions filed by pro se inmates to interpret them under whatever statute would provide relief." (citing *United States v. Jordan*, 915 F.2d 622, 624–25 (11th Cir. 1990)).

Ala. GenLR 72(a)(2)(R).   Upon consideration, the undersigned finds, and will recommend accordingly, that Taite's habeas petition (Doc. 27) is due to be **DISMISSED** as time-barred, and that Taite is due to be found not entitled either to a Certificate of Appealability or to proceed *in forma pauperis* on appeal.

## I.   Background

In November 1999, Taite[3] was convicted by a jury of second degree burglary, in violation of Ala. Code § 13A-7-6, in the Circuit Court of Clarke County, Alabama (Case No. CC-1999-169); on December 21, 1999, he was sentenced to life imprisonment under Alabama's Habitual Felony Offender Act, Ala. Code § 13A-5-9, due to his three prior felony convictions.   (*See* Doc. 62-1 at 31; Doc. 62-5 at 1; Doc. 83-5).   Taite appealed, and the Alabama Court of Criminal Appeals affirmed by memorandum opinion issued June 23, 2000.[4]   (Doc. 83-5); *Taite v. State*, No. CR-99-0781, 810 So. 2d 813 (Ala. Crim. App. June 23, 2000) (Table).   In its memorandum opinion, the Court of Criminal Appeals summarized the evidence presented at Taite's trial as follows:[5]

---

[3] Taite sometimes spells his surname as "Tate" and his middle name as "Orlanda," both here and in his state court proceedings.

[4] On direct appeal, Taite argued three issues: (1) the trial court erred in denying his motion to suppress evidence found in Taite's grandmother's home because the search was conducted by law enforcement officials acting outside of their jurisdiction; (2) the trial court erred in admitting evidence for which the chain of custody had been broken; and (3) his sentence as a habitual offender was illegal because he had received inadequate notice of the State's intent to use his prior convictions for enhancement purposes.

[5] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1).

On May 12, 1998, Danny Joe Sims was living with his wife and two daughters in Clarke County, Alabama.  On that day, Sims's home was burglarized and several unique firearms and personal items of jewelry were stolen.  On May 13, 1998, Larry Colston an investigator with the Wilcox County Sheriff's Department, assisted Clarke County law enforcement officers in the search of a Wilcox County home belonging to Taite's grandmother.  When the law enforcement officers arrived at the home, Ms. Taite gave her consent to search.  After searching the home, the officers found Sims's bracelet and a pair of diamond earrings that belonged to one of his daughters.

Colston had become aware of Taite as a possible suspect in the burglary when he was contacted by an inmate in the Wilcox County jail named Nakia McCaskey.  According to McCaskey he and Taite lived in the same community and the two men were acquaintances.  McCaskey testified that while visiting Taite near Taite's grandmother's home, Taite gave him two gold necklaces.  Taite did not tell McCaskey where he obtained the jewelry.  Approximately two weeks later, McCaskey testified that Taite told him that he knew where guns were hidden in the woods and he also told McCaskey the location of the guns.

Lorenzo Smith testified that at approximately 6:00 a.m. on the day of the burglary, Taite picked him up in a van and the two men went to a wood mill in Clarke County to seek employment.  The mill was not hiring, so Smith and Taite left.  As Taite was taking Smith home, he stopped at a house and knocked on the door.  Taite told Smith that he was going to "hit this house."  Smith told Taite that he did not want to be a part of it and Taite drove Smith home.

Later that day, at approximately 5:30 or 6:00 pm, Taite picked Smith up in the same van and Taite had Smith help him unload some guns from the van.  In return for his help, Taite gave Smith a .22 caliber pistol that was later determined to be a gun stolen from Sims's home.  On September 4, 1998 McCaskey led Investigator Colston to a wooded area in Wilcox County where six of Sims's guns were recovered.  Taite was subsequently arrested and charged with burglary in the second degree.

(Doc. 83-5 at 1-2).

Taite did not file an application for rehearing with the Court of Criminal

Appeals, which issued a Certificate of Judgment on July 11, 2000.[6]  On August 26, 2002, Taite filed a petition for a writ of certiorari to the Alabama Supreme Court, which dismissed the petition on August 29, 2002.  *See* (Doc. 83-7 [Docket Sheet of Court of Criminal Appeals Case #CR-99-0781]); Ala. R. App. P. 39(c)(1)-(2) (Except in certain inapplicable circumstances, "[t]he filing of an application for rehearing in the Court of Criminal Appeals is a prerequisite to review by certiorari in the Supreme Court…The petition for the writ of certiorari shall be filed with the clerk of the Supreme Court…within 14 days (2 weeks) of the decision of the Court of Criminal Appeals on the application for rehearing…").

On November 26, 2001, Taite, by then proceeding *pro se*, filed a motion for relief pursuant to Alabama Rule of Criminal Procedure 32 in Clarke County Circuit Court (Case No. CC-1999-000169.60), alleging, *inter alia*, that his conviction was illegally obtained through the "perjury testimony" of Smith and McCaskey, who were purportedly coerced by law enforcement officials and the trial prosecutor.  (*See* Exhibit 1 attached hereto).[7]  The State of Alabama filed its response in opposition to

---

[6] *See* Ala. R. App. P. 41(a)(1) ("The certificate of judgment of the court shall issue 18 days after the entry of judgment unless the time is shortened or enlarged by order … In the courts of appeals, the timely filing of an application for rehearing will stay the issuance of the certificate of judgment until disposition of the application unless otherwise ordered by the court. If the application is denied, the certificate of judgment shall issue 18 days after entry of the order denying the application unless the time is shortened or enlarged by order.").

[7]     The partially illegible timestamp on the Rule 32 petition indicates the clerk of the circuit court received it sometime in December 2001, and the State's response to the motion states that it was filed December 10, 2001.  However, Alabama courts apply the prisoner mailbox rule to Rule 32 petitions.  *See Ex parte Allen*, 825 So. 2d 271, 272 (Ala. 2002) ("Alabama courts have held that a pro se incarcerated petitioner/appellant is considered to have 'filed' a Rule 32 petition, a notice of appeal, or a petition for a writ of certiorari when those documents are given to prison officials for mailing." (citing *Holland v. State*, 621 So.

the motion on January 10, 2002, and on January 14, 2002, the circuit court entered an order dismissing the petition.  (*See* Exhibit 2 attached hereto).  Taite did not file a notice of appeal of that order, instead continuing to file motions in his Rule 32 action throughout 2002, 2003, and early 2004, including numerous motions to amend his petition.  Many of those motions were summarily denied by the circuit court.  (*See* Docket of Clarke County Circuit Court Case No. CC-1999-000169.60, available via https://v2.alacourt.com/).   On August 13, 2002, the State filed a response in opposition to one of Taite's filings, a motion the State identified as filed August 5, 2002, and styled "Amendment to Post Conviction Rule 32 Motion of Court Files."  By order entered August 28, 2002, the circuit court denied "the petition for postconviction relief."  (*See* Exhibit 3 attached hereto).

On February 12, 2004, the State again filed a response in opposition to the same August 5, 2002 "Amendment to Post Conviction Rule 32 Motion of Court Files."  By order dated February 17, 2004, the circuit court again denied "the petition of for [sic] post-conviction relief under Rule 32, Alabama Rules of Criminal Procedure."  On February 18, 2004 (under Alabama's prison mailbox rule), Taite filed a "Rebutter to Respondents to District Attorney," which the circuit court denied on March 18, 2004.  (*See* Exhibit 4 attached hereto).  The circuit court record

---

2d 373, 375 (Ala. Crim. App. 1993) ("[W]e hold that a pro se incarcerated petitioner 'files' a Rule 32 petition when he hands the petition over to prison authorities for mailing."); *Chavis v. Wise*, No. 1:09-CV-574-WKW, 2013 WL 3287104, at n.5 (M.D. Ala. June 28, 2013).

Though Taite did not provide the date on which the petition was mailed, his verification of the motion under penalty of perjury, as well as a number of other documents attached to the petition, are dated November 26, 2001.  For purposes of this recommendation, the undersigned assumes the Rule 32 petition was also mailed, and thus "filed," on November 26, 2001.

does not reflect Taite filing a notice of appeal of any of the circuit court's orders entered from 2002 through 2004.

After a period of inactivity, Taite filed another Rule 32 petition with the Clarke County Circuit Court on November 13, 2006 (under Alabama's prison mailbox rule) (Case No. CC-1999-000169.61), alleging, *inter alia*, that his conviction and sentence should be set aside based on newly-discovered evidence; specifically: "[B]oth c/o defendants witness [sic] [Smith and McCaskey] will state I never committed no burglary May 12/1998 and they was made [sic] to committ perjury in trial by [Clarke County District Attorney ]Robert Keahey and Sheriff Officer Larry Colston et al." (*See* Exhibit 5 attached hereto). The circuit court denied Taite's 2006 Rule 32 petition on January 26, 2007. (*See* Doc. 83-9 at 1; Exhibit 5 attached hereto).

Taite appealed the denial of his second Rule 32 petition, but the Court of Criminal Appeals dismissed the appeal for lack of jurisdiction by order and certificate of judgment issued April 2, 2007 (Case No. CR-06-0905), finding that Taite had prematurely filed his notice of appeal one or two days prior to the circuit court's entry of its order denying Taite's petition, that the premature notice was not effective to invoke the appellate court's jurisdiction, and that Taite had not filed an effective notice of appeal following the circuit court's entry of its order. (Docs. 83-9, 83-10). Taite attempted to file another notice of appeal, but it was dismissed by the Court of Criminal Appeals as untimely (*see* Exhibit 6 attached hereto).[8] [9]

---

[8] Despite <u>twice</u> being ordered to provide all relevant portions of the state court record under Rule 5 of the Rules Governing § 2254 Cases in the United States District Courts (*see* Docs.

On April 25, 2013, Taite filed a document styled "Corpus Ward Nation State International Writ of Habeas Corpus," along with a number of attached exhibits, with the United States District Court for the Middle District of Alabama (Civil Action No. 2:13cv291-WHA).[10]  (*See* Doc. 22 at 4-28).  That court ordered Taite to "file an amendment to his petition stating with specificity the judgment he seeks to challenge through his petition."  (*Id.* at 30).  Taite submitted multiple, largely incomprehensible filings in response to the court's order (*see id.* at 31-52, 54-67, 69-76), along with the $5 filing fee for a habeas action.  (*See id.* at 68).  Nevertheless, the Middle District of Alabama was able to ascertain that Taite was a state prisoner challenging a criminal judgment handed down by the Clarke County Circuit Court, which is within this judicial district, *see* 28 U.S.C. § 81(c)(2).  Thus, the Middle

---

34, 80), the Respondent has failed to produce any records from (or indeed even mention in its briefing) Taite's 2001-04 Rule 32 proceedings in Clarke County Circuit Court despite those records being readily accessible on alacourt.com (https://v2.alacourt.com/), instead skipping from Taite's direct appeal proceedings to his Rule 32 proceedings commenced in 2006.  Rather than delay these proceedings any further, the undersigned has retrieved these records from alacourt.com (with relevant portions attached hereto as exhibits) and endeavored to fill in the gaps in the procedural history of Taite's state court proceedings.

[9] The Respondent's submissions and the Clarke County Circuit Court's docket (*see generally* Clarke County Circuit Court Case No. CC-1999-000169.62) indicate that Taite has filed numerous other challenges to his conviction in Alabama state courts since initiating his 2006 Rule 32 proceedings.  However, for present purposes, the undersigned need delve no further into the state court record.

[10]    "Under the federal 'mailbox rule,' a pro se federal habeas petition is deemed to be filed on the date it is delivered to prison authorities for mailing."  *Taylor v. Williams*, 528 F.3d 847, 849 n.3 (11th Cir. 2008) (citing *Alexander v. Sec'y, Dep't of Corr.*, 523 F.3d 1291, 1294 n.4 (11th Cir. 2008)).  Indeed, the "mailbox rule" applies to all court filings by *pro se* prisoners.  *See Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) ("Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing.").
    Taite's "Corpus Ward Nation State International Writ of Habeas Corpus" is dated April 25, 2013, as is a "Certificate of Service" included with it.  (*See* Doc. 22 at 11-12). The undersigned will assume it was delivered to prison officials for mailing (and thus "filed") on that date.

District of Alabama ordered that Taite's habeas action be transferred to this Court under 28 U.S.C. § 2241(d).[11]  (*See* Doc. 22 at 131).

Following transfer, on July 18, 2013, this Court ordered Taite to file a new § 2254 petition on the Court's form.[12]  (*See* Doc. 25).   Taite filed the present, operative § 2254 petition on this Court's form (Doc. 27) on July 24, 2013, and the undersigned ordered the petition served on the Respondent.  (*See* Doc. 33 at 2 ("The undersigned now, therefore, **DIRECTS** the Clerk to issue the standard order directing service of Taite's amended—***and now operative*** habeas petition (Doc. 27) on the respondent and the Attorney General of Alabama."); Doc. 34).

Taite continued, as he did in the Middle District of Alabama, to pepper the Court with numerous incomprehensible filings.  At first, the undersigned addressed and denied a number of these filings.   However, after Taite persisted in this

---

[11]    Section 2241(d) provides: "Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application. The district court for the district wherein such an application is filed in the exercise of its discretion and in furtherance of justice may transfer the application to the other district court for hearing and determination."

Because Taite challenges a conviction and sentence handed down by a state court within this judicial district, this Court has jurisdiction to entertain his habeas petition, the the Middle District of Alabama District Court had discretion to transfer his petition here, and Taite's repeated assertions that the federal district courts lost jurisdiction over his petition following transfer are meritless.

[12]  *See* Rule 2(d) of the Rules Governing Section 2254 Cases in the United States District Courts (a § 2254 habeas "petition must substantially follow either the form appended to these rules or a form prescribed by a local district-court rule.  The clerk must make the forms available to petitioners without charge."); SD ALA LR 83.9(d)(1) (effective until July 31, 2015) ("All pleadings filed by persons proceeding *pro se* shall be filed on forms provided by the court, or in a form substantially conforming to such forms, unless otherwise ordered by the court.").

practice, the undersigned, invoking the Court's "inherent power and []constitutional obligation to protect [its] jurisdiction from conduct which impairs [its] ability to carry out Article III functions[,]" *Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986) (en banc), ordered a number of Taite's filings stricken and prohibited him "from submitting any filings in this case of any nature, including by motion, notice, affidavit or otherwise," unless permitted by the Court.  (Doc. 56).  Any further filings submitted by Taite in contravention of that directive were ordered to be held by the Clerk of Court "without being entered in the docket/record of this case until further order of the Court at the conclusion of the case."  (*Id.* at 3).

The Respondent was served with Taite's operative habeas petition and, through the Office of the Attorney General of Alabama, has filed an Answer (Doc. 62), as supplemented (Docs. 73, 83), asserting only that Taite is due no relief because he filed his habeas petition beyond the one-year statute of limitations period for such filings, *see* 28 U.S.C. § 2244(d)(1). [13]

## II.   Analysis

### A.   Taite's Habeas Petition is Time-Barred

As Taite's habeas petition was filed after April 24, 1996, it is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2241 *et seq.* ("AEDPA").  *See, e.g., San Martin v. McNeil*, 633 F.3d 1257, 1265 (11th Cir. 2011). "AEDPA imposes a one-year statute of limitations on the filing of § 2254 petitions."

---

[13] The undersigned abides by the directive that "courts should construe a habeas petition filed pro se more liberally than one drawn up by an attorney."  *E.g., Gunn v. Newsome*, 881 F.2d 949, 961 (11th Cir. 1989).  Indeed, to the extent practicable, the undersigned has done so for all of Taite's numerous filings.

*Lugo v. Sec'y, Fla. Dep't of Corr.*, 750 F.3d 1198, 1207 (11th Cir. 2014) (citing 28

U.S.C. § 2244(d)(1) ("A 1–year period of limitation shall apply to an application for a

writ of habeas corpus ....")), *cert. denied*, 135 S. Ct. 1171 (2015). *Accord, e.g.*, *San*

*Martin*, 633 F.3d at 1265 ("AEDPA imposes a one-year statute of limitations on all

federal habeas corpus petitions.").[14] "This rule 'serves the well-recognized interest

in the finality of state court judgments' and 'reduces the potential for delay on the

road to finality by restricting the time that a prospective federal habeas petitioner

has in which to seek federal habeas review.' " *San Martin*, 633 F.3d at 1265 (citing

*Duncan v. Walker,* 533 U.S. 167, 179 (2001)). AEDPA's one-year limitations period

begins to "run from the latest of --

> **(A)** the date on which the judgment became final by the conclusion of
> direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created
> by State action in violation of the Constitution or laws of the United

---

[14]    In his operative habeas petition, Taite argues that AEDPA "does not apply when the
U.S. Congress and or; U.S. Constitution was suspended under Federal Reserved
Bankruptcy Act House Joint Resolution 192 by U.S. President Theodore Roosevelt in year
of 1933." (Doc 27 at 12). The undersigned takes judicial notice of the fact that Theodore
Roosevelt died in 1919 and therefore could not have done such an act in 1933. Even had
Theodore Roosevelt been alive in 1933, the undersigned takes judicial notice of the fact that
Herbert Hoover and then Franklin D. Roosevelt (inaugurated in March) was the United
States president in 1933. Therefore, lacking executive power under Article II of the U.S.
Constitution at the time, any attempt by Theodore Roosevelt to sign House Joint Resolution
192 into law would have been without effect.
     Taite also claims that he is not subject to AEDPA because he is moving for relief
"under the due process provision of the de jure Republican Moorish American Constitution
et seq., United Nations Indigenous Tribal Peoples Rights…and the Treaty of Al-Morocco
and American Republic of 1836 A.D. 1787 Treaty re-ratified in 1986." (*Id.*). However,
claims under the Republican Moorish American Constitution and the United Nations
Indigenous Tribal Peoples Rights are not cognizable on habeas review, which is concerned
only with "violation[s] of the Constitution or laws or treaties of the United States." 28
U.S.C. § 2254(a). As for the "Treaty of Al-Morocco and American Republic of 1836 A.D.
1787 Treaty re-ratified in 1986," Taite has failed to present any coherent argument as to
what relief, if any, he is due under it, or why it AEDPA would not still apply to such a claim.

States is removed, if the applicant was prevented from filing by such State action;

**(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

**(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Taite has made no showing that he is entitled to rely on either of the triggering dates provided by § 2244(d)(1)(B) and (C).[15]  Moreover, the undersigned finds that Taite's habeas petition is untimely regardless of whether § 2244(d)(1)(A) or (D) applies.

The Alabama Court of Criminal Appeals issued its memorandum opinion affirming the Clarke County Circuit Court's criminal judgment against Taite on Friday, June 23, 2000.  In Alabama, "[i]n all criminal cases except pretrial appeals by the state, the filing of an application for rehearing in the Alabama Court of Criminal Appeals is a prerequisite to certiorari review by the Alabama Supreme Court." Ala. R. App. P. 40(d)(1).  *See also* Ala. R. App. P. 39(c)(1).  Taite did not file an application for rehearing with the Court of Criminal Appeals, *See* Ala. R. App. P.

---

[15] *Cf. Lugo*, 750 F.3d at 1207 n.9 ("We recognize that Lugo's pleadings in the district court alleged that 'U.S.-State impediments prevent[ed] Lugo from timely filing a federal habeas corpus petition.' If proven, an allegation like that could provide a different triggering date for the application of AEDPA's one-year deadline. *See* 28 U.S.C. § 2244(d)(1)(B) (providing an alternative limitations trigger running from 'the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action'). Lugo never developed the factual or legal basis for this ground in the district court.").

40(c) ("An application for rehearing and the brief in support of the application must be filed with the clerk of the appropriate appellate court within 14 days (2 weeks) of the date the decision being questioned is issued…"); thus, his criminal judgment became final, and AEDPA's one-year statute of limitations began to run, on Tuesday, July 11, 2000, the date the Court of Appeals issued its Certificate of Judgment. *See, e.g.*, *Ex parte Perkins*, 920 So. 2d 599, 601 (Ala. Crim. App. 2005) (per curiam) ("Perkins's direct appeal was final when this Court issued the certificate of judgment on February 20, 2003." (citing Ala. R. App. P. 41)).

"The AEDPA clock continues to run until the individual seeking review files a state motion for post-conviction relief. Once the petitioner files a motion for post-conviction relief in state court, the AEDPA clock stops." *San Martin*, 633 F.3d at 1266 (citing 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.")). Here, the docket of Taite's Clarke County criminal action indicates that Taite did not file his first Rule 32 petition until November 23, 2001. By then, Taite's one-year AEDPA clock had expired by several months, on July 11, 2001.[16] The law of this Circuit is clear that "a state court

---

[16] *See Downs v. McNeil*, 520 F.3d 1311, 1317-18 (11th Cir. 2008) ("Downs' federal limitations period began to run October 18, 1999, the day the Florida Supreme Court issued its mandate denying his second motion for postconviction relief under Fla. R. Crim. P. 3.850…The district court interpreted § 2244(d)(1)'s one-year rule to mean the limitations period expired October 17, 2000, 365 days after the mandate issued. Although that calculation appears to comply with the statutory directive limiting the limitations period to 'one year,' this Court has suggested that the limitations period should be calculated according to the 'anniversary method,' under which the limitations period expires on the

petition [for post-conviction relief] that is filed following the expiration of the federal limitations period 'cannot toll that period because there is no period remaining to be tolled.' " *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001) (quoting *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) (per curiam)). *Accord Lugo*, 750 F.3d at 1208 ("Lugo's [Florida ]Rule[ of Criminal Procedure] 3.851 motion was not 'actually pending' in state court until October 18, 2004—twelve days after the one-year limitations period expired. The filing of Lugo's Rule 3.851 motion did not operate to toll the limitations period under § 2244(d)(2) because no period remained to be tolled. *See Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001)."), *cert. denied*, *Lugo v. Jones*, 135 S. Ct. 1171 (2015). Thus, to the extent § 2244(d)(1)(A) applies in the present action, none of Taite's state-court post-conviction proceedings can serve to toll the AEDPA clock on his habeas petition, which, having been filed April 25, 2013, in the Middle District of Alabama, is approximately twelve years untimely.[17]

---

anniversary of the date it began to run. *Ferreira v. Sec'y, Dep't of Corr.*, 494 F.3d 1286, 1289 n.1 (11th Cir. 2007) (noting that limitations period should be calculated using 'the anniversary date of the triggering event'); *accord United States v. Hurst*, 322 F.3d 1256, 1260-61 (10th Cir. 2003); *United States v. Marcello*, 212 F.3d 1005, 1008-09 (7th Cir. 2000). Applying the anniversary method to this case means Downs' limitations period would have expired October 18, 2000-not October 17, 2000, as the district court held.").

[17] Taite previously filed with this Court a habeas petition "challenging the April 7, 2010 decision of the Alabama Board of Pardons and Parole denying his request for a pardon/parole…since he is actually innocent of the second-degree burglary for which he stands convicted[,]" which the Court dismissed without prejudice for failure to exhaust state court remedies. *Taite v. Davenport*, No. CA 10-0329-KD-C, 2010 WL 3489963 (S.D. Ala. July 30, 2010), *report and recommendation adopted*, Civil Action No. 10-0329-KD-C, 2010 WL 3489960 (S.D. Ala. Aug. 31, 2010). Regardless of whether that petition related to the claims in Taite's present petition, "the filing of a petition for habeas corpus in federal court does not toll the statute of limitations…" *Rhines v. Weber*, 544 U.S. 269, 274-75 (2005). Moreover, for statute of limitations purposes, a habeas petition does not relate back to a previously filed petition that was dismissed without prejudice. *Nyland v. Moore*, 216 F.3d 1264, 1266 (11th Cir. 2000) (per curiam).

Taite's filings, construed liberally, could also be read as claiming entitlement to the triggering date provided by § 2244(d)(1)(D), the "factual predicate" being the alleged false trial testimony of his co-defendants, made at the behest of the prosecutor. [18]   "The analysis of 'factual predicate' and 'due diligence' in § 2244(d)(1)(D) is symbiotic. The factual predicate first must be determined to give meaning to due diligence in discovering the claim for a particular petitioner's case." *Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1155 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 1905 (2015).

> "[I]t should go without saying that a factual predicate must consist of facts. Conclusions drawn from preexisting facts, even if the conclusions are themselves new, are not factual predicates for a claim." *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012). The "factual predicate" also has been referenced as the underlying "vital facts" of a petitioner's claim. *See, e.g., Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012) ("The 'due diligence' clock starts ticking when a person knows or

---

[18]   "[T]he recantation of testimony against a petitioner is not a basis for federal habeas corpus relief." *Brownlee v. Haley*, 306 F.3d 1043, 1064 (11th Cir. 2002). *See also Smith v. Wainwright*, 741 F.2d 1248, 1257 (11th Cir. 1984) (" 'Newly discovered evidence in the form of a confession by another does not render the conviction void and subject to collateral attack by habeas corpus because it goes to the merits of the conviction, not its legality.' " (quoting *Shaver v. Ellis*, 255 F.2d 509, 511 (5th Cir. 1958) (per curiam)).   However, the undersigned liberally construes Taite's filings as alleging a due process violation based on *Giglio v. United States*, 405 U.S. 150 (1972).

> *Giglio* error … occurs when "the undisclosed evidence demonstrates that the prosecution's case included perjured testimony and that the prosecution knew, or should have known, of the perjury." *United States v. Agurs,* 427 U.S. 97, 103, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976). "If false testimony surfaces during a trial and the government has knowledge of it, ... the government has a duty to step forward and disclose." *Brown v. Wainwright,* 785 F.2d 1457, 1464 (11th Cir. 1986). "In order to prevail on a *Giglio* claim, a petitioner must establish that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." *Tompkins v. Moore,* 193 F.3d 1327, 1339 (11th Cir. 1999).

*Ventura v. Attorney Gen., Fla.*, 419 F.3d 1269, 1276-77 (11th Cir. 2005).

through diligence could discover the vital facts, regardless of when their legal significance is actually discovered."); *Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009) ("The factual predicate of a claim could have been discovered when a petitioner knows or should have known through due diligence the vital facts underlying the claim." (internal quotation marks omitted)); *McAleese v. Brennan*, 483 F.3d 206, 214 (3d Cir. 2007) ("Though the AEDPA does not define 'factual predicate,' we have held that section 2244(d)(1)(D) provides a petitioner with a later accrual date than section 2244(d)(1)(A) only if vital facts could not have been known." (second internal quotation marks and alteration omitted)); *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) ( "Section 2244(d)(1)(D) gives defendants the benefit of a later start if vital facts could not have been known by the date the appellate process ended.").

Comparing § 2244(d)(1)(D), applicable to state habeas prisoners, to 28 U.S.C. § 2255(f)(4), applicable to federal habeas prisoners, the Supreme Court has noted: " 'Due diligence ... is an inexact measure of how much delay is too much.' " *Walker v. Martin,* 562 U.S. 307, 131 S. Ct. 1120, 1129, 179 L. Ed. 2d 62 (2011) (alteration omitted) (quoting *Johnson v. United States,* 544 U.S. 295, 309, n.7, 125 S. Ct. 1571, 1581, n.7, 161 L. Ed. 2d 542 (2005)). Therefore, the due diligence required of a state prisoner in filing a § 2254 habeas petition must be determined on a case-by-case basis relative to the factual predicate…

…

"Section 2244(d)(1)(D) follows the norm for a federal statute of limitations. Time begins when the prisoner knows (or through diligence could discover) the important facts, *not when the prisoner recognizes their legal significance.*" *Owens,* 235 F.3d at 359 (emphasis added); *see Brown v. Barrow,* 512 F.3d 1304, 1307 (11th Cir. 2008) (per curiam) (recognizing the AEDPA limitations period regarding § 2244(d)(1)(D) runs from the latest of "the date on which the factual predicate of the claim or claims presented *could have been discovered through the exercise of due diligence* " (emphasis added) (internal quotation marks omitted)); *Schlueter v. Varner,* 384 F.3d 69, 74 (3d Cir. 2004) ("By its language, the one-year period of limitation commences under section 2244(d)(1)(D) when the factual predicate of a claim could have been discovered through the exercise of due diligence, *not when it actually was discovered.*" (emphasis added))…

*Id.* at 1155-57 (footnotes omitted).

Assuming that Taite discovered that his co-defendants' alleged perjury was committed at the state's behest on the same day he mailed his first Rule 32 petition, November 26, 2001, and that Taite was reasonably diligent in doing so, his present habeas petition would still be untimely under § 2244(d)(1)(D).  Taite's first Rule 32 proceedings ended, at the latest, on March 18, 2004, the date the circuit court entered its last order in those proceedings, *see supra*.  Thus, Taite's one-year AEDPA clock under § 2244(d)(1)(D) would have begun to run on April 30, 2004, the day after Taite's 42-day window to file a notice of appeal expired.  However, Taite did not file his second Rule 32 petition in the Clarke County circuit court until November 13, 2006, approximately two-and-a-half years later.

In sum, whether under § 2244(d)(1)(A) or (D), Taite's habeas petition was untimely filed.

## B.    Taite is not entitled to equitable tolling

"If a defendant files a petition for a federal writ of habeas corpus beyond the one-year limitation period, the district court may still review an untimely petition filed by a petitioner entitled to equitable tolling. As the Supreme Court has explained, the time period specified in 28 U.S.C. § 2244 is a statute of limitations, not a jurisdictional bar, and Section 2244 does not bar the application of equitable tolling in an appropriate case." *San Martin*, 633 F.3d at 1267 (citing *Holland v. Florida*, 560 U.S. 631, 645 (2010)).  *Accord Lugo*, 750 F.3d at 1207.  "A habeas petitioner 'is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood

in his way and prevented timely filing.' " *Lugo*, 750 F.3d at 1207 (quoting *Holland*,

560 U.S. at 649 (quotation marks)).

" 'The diligence required for equitable tolling purposes is reasonable

diligence, not maximum feasible diligence.' " *Id.* (quoting *Holland*, 560 U.S. at 653

(internal citation and quotation marks omitted)).  Nevertheless,

> [i]t is well settled that "[t]he burden of proving circumstances that
> justify the application of the equitable tolling doctrine rests squarely
> on the petitioner." *San Martin,* 633 F.3d at 1268. A petitioner "must
> plead or proffer enough facts that, if true, would justify an evidentiary
> hearing on the issue." *Hutchinson v. Florida,* 677 F.3d 1097, 1099
> (11th Cir. 2012). "And the allegations supporting equitable tolling
> must be specific and not conclusory." *Id.* In light of the petitioner's
> burden, district courts are not "required to mine the record,
> prospecting for facts that the habeas petitioner overlooked and could
> have, but did not, bring to the surface." *Chavez*[ *v. Sec'y, Fla. Dep't of
> Corr.*]*,* 647 F.3d [1057,] 1061[ (11th Cir. 2011)].

*Id.* at 1209.

Taite has not demonstrated, nor even argued, that he is entitled to equitable

tolling of AEDPA's statute of limitations, and nothing in the record, *see* Section I,

*supra*, supports a determination that Taite has either been pursuing his rights with

reasonable diligence or that extraordinary circumstances prevented his timely filing

of the present habeas petition.  Thus, the undersigned finds that Taite is not

entitled to equitable tolling in this action.

### C.    Taite is not entitled to use the "actual innocence" gateway

Distinct from equitable tolling, the United States Supreme Court has held

that a habeas petitioner is entitled to an equitable exception to § 2244(d)(1), upon a

sufficient showing of "actual innocence," as "applied in *Schlup v. Delo*, 513 U.S. 298,

115 S. Ct. 851, 130 L. Ed. 2d 808 (1995), and further explained in *House v. Bell*, 547 U.S. 518, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006)[,]" which "serves as a gateway through which a petitioner may pass" to overcome the expiration of AEDPA's statute of limitations. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). *Accord, e.g., Tamayo v. Stephens*, 740 F.3d 986, 990 (5th Cir. 2014) (per curiam) ("In *Perkins* the Court concluded that a properly supported claim of actual innocence of the crime charged could excuse the failure to comply with the statute of limitations of the Anti–Terrorism and Effective Death Penalty Act ('AEDPA') for a first-time habeas petition."); *Garza v. Wyo. State Penitentiary Warden*, 528 F. App'x 910, 913 (10th Cir. July 2, 2013) (unpublished) ("Actual innocence serves more as an exception to the statute of limitations altogether than simply as a factor to toll the clock." (citing *Perkins*, 133 S. Ct. at 1931)). The Court "caution[ed], however, that tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.' " *Perkins*, 133 S. Ct. at 1928 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). *See also Gore v. Crews*, 720 F.3d 811, 817 (11th Cir. 2013) (per curiam) ("*McQuiggin*…hold[s] that there is an 'equitable exception' to the statute of limitations applicable to habeas claims, 28 U.S.C. § 2244(d), but only when the petitioner presents new evidence that 'shows it is more likely than not that no reasonable juror would have convicted the petitioner.' *Id.* at 1931, 1933 (alteration and quotation marks omitted)."). The

Court "stress[ed]…that the *Schlup* standard is demanding" and that "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.' " *Perkins*, 133 S. Ct. at 1936 (quoting *Schlup*, 513 U.S. at 316).

A "petitioner's showing of innocence is not insufficient solely because the trial record contained sufficient evidence to support the jury's verdict." *Schlup*, 513 U.S. at 331.   Nevertheless, a mere "showing that a reasonable doubt exists in the light of the new evidence" is not sufficient to satisfy *Schlup*.   513 U.S. at 329.   Rather, "[t]o invoke the miscarriage of justice exception to AEDPA's statute of limitations, … a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'   Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *Perkins*, 133 S. Ct. at 1935 (quoting *Schlup,* 513 U.S., at 327) (citation omitted).   As was "stated in *Schlup,* '[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of ... evidence [of actual innocence].' " *Id.* (quoting *Schlup*, 513 U.S. at 332).   *Accord Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1017 (11th Cir. 2012) (per curiam).[19]

---

[19]     "[A]ssertion of actual innocence, by itself, is not enough. 'Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.' " *Cunningham v. Dist. Attorney's Office for Escambia Cnty.*, 592 F.3d 1237, 1273 (11th Cir. 2010) (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)).   That is, "[a] *Schlup* claim would need to allege an arguably viable constitutional claim

Taite asserts that he is actually innocent of the crime of second-degree burglary for which he was convicted in Clarke County Circuit Court.  In support of this assertion, he has submitted two written statements purportedly made by Lorenzo Smith, a co-defendant in Taite's criminal case who testified against Taite at trial.[20]  The first statement is a two-page unsworn declaration made under 28 U.S.C. § 1746 and dated September 28, 2010.  (Doc. 47 at 5 – 6).  The 2010 declaration is addressed to the U.S. Attorney's Office in Mobile, Alabama, and has two time stamps: one indicating that it was received by officials of this District on October 1, 2010; and another indicating that it was received by the Clarke County Circuit Clerk's Office on November 28, 2011.  In his 2010 declaration, Smith asserts:

1. that Taite "never burglarized Danny Joe Sims Home May 12, 1998 in criminal Case No. CC-99-169-M[;]"

2. that he and his cousin and co-defendant Nakia McCaskey were "forced" by state officials, including the Clarke County sheriff and the prosecutor, "to commit perjury and say illegally that Marcus Taite Burglarized Danny Joe

---

independent from the issue of" evidence of actual innocence.  *Id.*  Eleventh Circuit "precedent does not allow habeas relief on a freestanding innocence claim in non-capital cases[,]"  *id.* at 1272 (citing *Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1356 (11th Cir. 2007) ("[O]ur precedent forbids granting habeas relief based upon a claim of actual innocence,…at least in non-capital cases." (citing cases))), and *McQuiggin v. Perkins* has not altered that rule.

    As explained previously, *see supra*, n.18, Taite appears to be coupling his claim of actual innocence with an alleged *Giglio* due process violation.

[20] Taite's "own self-serving assertions of innocence are insufficient to support his actual innocence claim. 'A reasonable juror surely could discount [a petitioner's] own testimony in support of his own cause.' "  *Bates v. Metrish*, No. 07-11073, 2010 WL 1286413, at *11 (E.D. Mich. Mar. 30, 2010) (quoting *McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) (citing cases)).

Sims home to get him a LIFE SENTENCE Conviction in Alabama Prison total illegally[,]" in exchange for receiving probation; and

3. that he "will stand trial in the favor of the United States Attorney office and Marcus Taite Favor to free an innocent man who [sic] family loves him and wanna see him at home and a dear friend of mines [sic] who grew up with me and play together every day."

Smith's second statement is a sworn affidavit executed March 3, 2014. (Doc. 65 at 24 – 28). The 2014 affidavit references Smith's 2010 declaration and essentially reiterates and expands on the allegations in that declaration. In it, Smith avers

1. that Taite "is total innocent of all charge in" his Clarke County criminal action, "never committed the crime or [sic] burglary second degree May 12, 1998[,]" and "was in Miami, Florida and never in the State of Alabama" (*id.* at 24);

2. that Smith and his "blood cousin Nakia McCaskey committed the case and crime May 12, 1998 by ourselves on victim Danny Joe Sims home in Thomasville, Alabama…" (*id.* at 25);

3. that "State of Alabama District Attorney Robert Keahey, Sr. and Sheriff Larry Colston made, threat [sic], forced, coercion, us to illegal testify in an illegal trial of Marcus Tate/Taite Nov 02, 1999 before a live grand jury members and Judge Raymond Lee McPhearson of Clarke County Circuit Court to illegal get Marcus Tate/Taite a life sentence in the grand jury total

illegal [sic]" (*id.* at 26);

4.  that the District Attorney made Smith and McCaskey "write false statements" before Taite's trial (*id.*);

5.  that their "deal was youth offender and 3 years probations [sic] … to illegal testify against Marcus Tate/Taite" and that they "would be sent to prison" if they did not "testify illegal" (*id.*); and

6.  that Smith "was not made or forced or coercion [sic] or threat [sic] or promised anything to make this affidavit" and made it because he "realized [he] was wrong" and "took a man from his family for many years by been forced by Sheriff Larry Colston and District Attorney Robert Keahey, Sr Nov 2, 1999" (*id.* at 27).

Taite has also submitted the transcript of a hearing held May 31, 2011, in the Circuit Court of Montgomery County, Alabama, in which Taite sought a pardon based on the purported recantations of his co-defendants.  (Doc. 65 at 29 – 45). Taite presented no witnesses but, through his own *pro se* argument, claimed that Smith first broached the subject of recanting his testimony thirteen years after Taite's conviction, when "he called and went over to [Taite's] mama's house" and asked "Where is your son at?"  When Taite's mother told Smith that Taite was "in prison," Smith purportedly responded, "Tell him if he needs some help, you know what I'm saying, I want to come back and straighten everything out."  Smith then purportedly wrote his first declaration, which Taite sent to this Court.  (Doc. 65 at 35).

Taite's evidence of Smith's recantation of his trial testimony does not satisfy his burden of producing "new **reliable** evidence" under *Schlup*. 513 U.S. at 324 (emphasis added) (characterizing "new reliable evidence" as "exculpatory scientific evidence, **trustworthy** eyewitness accounts, or critical physical evidence" (emphasis added)). The Eleventh Circuit

> repeatedly ha[s] noted that "recantations are viewed with extreme suspicion by the courts." *United States v. Santiago,* 837 F.2d 1545, 1550 (11th Cir. 1988); *United States v. Smith,* 433 F.2d 149, 150–51 (5th Cir. 1970) (quoting *Newman v. United States,* 238 F.2d 861, 862 n. 1 (5th Cir. 1956)). This makes sense, because … recantation testimony "upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction." *Dobbert v. Wainwright,* 468 U.S. 1231, 1233–34, 105 S. Ct. 34, 36, 82 L. Ed. 2d 925 (1984) (Brennan, J., dissenting).

*In re Davis*, 565 F.3d 810, 825 (11th Cir. 2009) (per curiam). *See also*, *e.g.*, *United States v. Jackson*, 427 F. App'x 109, 112 (3d Cir. 2011) (unpublished) (" 'Courts have historically viewed recantation testimony with great suspicion.' *Landano v. Rafferty,* 856 F.2d 569, 572 (3d Cir. 1988); *see also United States v. Miner,* 131 F.3d 1271, 1273 (8th Cir. 1997) ('Courts look upon recantations with suspicion.'); *Spence v. Johnson,* 80 F.3d 989, 997 (5th Cir. 1996) ('recanting affidavits and witnesses are viewed with extreme suspicion by the courts' (internal quotation omitted)); *United States v. Chambers,* 944 F.2d 1253, 1264 (6th Cir. 1991) ('Recanting affidavits and witnesses are viewed with extreme suspicion.')."); *Haouari v. United States*, 510 F.3d 350, 353 (2d Cir. 2007) ("It is axiomatic that witness recantations 'must be looked upon with the utmost suspicion.' " (quoting *Ortega v. Duncan*, 333 F.3d 102,

107 (2d Cir. 2003) (internal quotation omitted)); *United States v. Provost*, 969 F.2d 617, 620 (8th Cir. 1992) ("[N]ew trial motions based on recanted testimony are immediately suspect." (citing *United States v. Ward*, 544 F.2d 975, 976 (8th Cir. 1976) (per curiam)).

As the Court of Appeals for the Ninth Circuit has noted, " '[r]ecanting testimony is easy to find but difficult to confirm or refute: witnesses forget, witnesses disappear, witnesses with personal motives change their stories many times, before and after trial.' " *Jones v. Taylor*, 763 F.3d 1242, 1248 (2014) (quoting *Carriger v. Stewart*, 132 F.3d 463, 483 (9th Cir. 1997) (Kozinski, J., dissenting)) (alteration added). "For these reasons, a witness' later recantation of his trial testimony does not render his earlier testimony false. Rather, a witness' recantation is considered in addition to his trial testimony and in the context in which he recanted when assessing the likely impact it would have on jurors." *Id.* (citation and quotations omitted).

Given that Taite has asserted "actual innocence" based only on Smith's supposed recantation, and given the "extreme suspicion" with which this Court must view the recantation, Taite bears a particularly heavy burden under *Schlup* of, *inter alia*, showing that Smith's statements are reliable. *Cf. id.* ("[I]ndeed, the proof is even less reliable than the evidence rejected in [other cases applying *Schlup*] because it is all in the form of recantation testimony, uncorroborated by any other evidence.").[21] At this, he has failed.

---

[21] That Smith readily admits to committing perjury renders his statements further suspect. *See Ajamu-Osagboro v. Patrick*, 620 F. Supp. 2d 701, 718 (E.D. Pa. 2009) ("The court also

First, both of Smith's written statements are written in conclusory and general terms, consisting of little more than bare claims that "Taite didn't do it" and "the State forced McCaskey and I to lie," with the 2013 affidavit providing the additional bare assertions that "McCaskey and I actually did it" and "McCaskey and I lied to receive leniency in sentencing."  Moreover, both statements appear to have been authored by Taite, with Smith simply providing his signature.  Smith's sparse 2010 statement is similar to unsigned draft affidavits and interrogatories that Taite filed in both his 2001 and 2006 Rule 32 proceedings (*see* Exhibits 7 [from 2001 proceedings] and 8 [from 2006 proceedings] attached hereto), possibly under the impression that Smith would be made to execute and/or respond to these documents.  Smith's 2013 affidavit, the more detailed of Smith's statements, was executed after Taite had commenced this habeas action, contains several of Taite's distinctive grammatical "tics" (e.g. use of the phrases "I am" and "total innocent"), and has the directive "original copy and copies mail to Marcus Tate/Taite" typed at the top.[22]

The timing of Smith's recantation is certainly suspect, with his first

---

finds persuasive the Pennsylvania Supreme Court's conclusion that a 'recantation [that] involves an admission of perjury ... is the least reliable form of proof.' *Commonwealth v. Henry,* 550 Pa. 346, 706 A.2d 313, 321 (1997). []Here, not only does petitioner's new evidence consist of nothing but recantations, but those recantations involve admissions of perjury from both Joseph and Marshall Thomas. This suspicious and untrustworthy testimony can not provide the reliable evidence that demonstrates that no reasonable juror would have voted to convict petitioner.").

[22] Moreover, in his 2013 affidavit, Smith claims that his own arrest for the burglary was "an [sic] lawful arrest" but that Taite's arrest and trial were "total flase [sic]" and "illegal." Such self-serving statements further convince the undersigned that Taite drafted the 2013 affidavit himself.

statement being executed in 2010, approximately a decade after Taite's conviction and after numerous other challenges to his conviction had failed (some of them based on Taite's claims that Smith and McCaskey were coerced to lie at trial). *Cf. Strayhorn v. Booker*, 718 F. Supp. 2d 846, 874 (E.D. Mich. 2010) ("The affidavit submitted by petitioner does not explain why the witnesses waited nearly two years after petitioner's trial to come forward. *See Lewis v. Smith*, 100 Fed. Appx. 351, 355 (6th Cir. 2004) (proper for district court to reject as suspicious a witness' recanting affidavit made two years after petitioner's trial); *Olson v. United Stat*es, 989 F.2d 229, 231 (7th Cir.1993)(recantation more than four years after trial testimony was dubious)."); *Bates v. Metrish*, No. 07-11073, 2010 WL 1286413, at *11 (E.D. Mich. Mar. 30, 2010) (holding similarly where recanting witness waited "10 years after the trial to indicate that he was willing to recant his trial testimony and 16 years after trial to execute his affidavit").

Smith's only reasons for now recanting are conclusory statements about wanting to "set the records right" and "free a innocent man who family loves him…" (Doc. 47 at 6; Doc. 65 at 24).   However, Smith's acknowledgement that he considers Taite a "dear friend" (Doc. 47 at 6) and wants to help his family out cast doubt on his motives and credibility; given the length of time that has passed since Smith's and Taite's Clarke County criminal proceedings, and that Smith's sentence of three years of probation (purportedly received in exchange for testifying against Taite) has long expired, Smith has little to lose and more to gain in now recanting his trial testimony.   *Cf. House v. Bell*, 547 U.S. 518, 552 (2006) ("The confession evidence

here involves an alleged spontaneous statement recounted by two eyewitnesses with no evident motive to lie. For this reason it has more probative value than, for example, incriminating testimony from inmates, **suspects, or friends** or relations **of the accused**." (emphasis added)); *Jones v. Taylor*, 763 F.3d at 1249 ("Several features of the recantations here persuade us that they are insufficient to prove Jones' innocence.   The recantations are all from Jones' family members, which reduces their weight and reliability. *See House*, 547 U.S. at 552, 126 S. Ct. 2064 (noting that testimony by friends or relations of the accused might have less probative value than testimony from disinterested witnesses); *McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) (noting that family members might have a personal stake in a defendant's exoneration). Moreover, all three witnesses came forward with changed stories at roughly the same time, years after trial, and only one of them provided a reason for the delay. The other two changed their stories long after trial with no more explanation than that their memories and understandings of the events had changed. The timing of the recantations casts some doubt on their veracity, especially as to Ken Jones and Jennifer Pond, who provide no explanation for their delay in coming forward. *See Christian*[ *v. Frank*], 595 F.3d [1076,] 1084 n.11[ (9th Cir. 2010)] (noting that a witness' recantation was 'especially unreliable given that it was made more than a decade after his original [testimony]'); *McCray*, 499 F.3d at 573 (discounting evidence from witnesses who did not provide a good explanation for why they delayed in coming forward)."); *Milton v. Sec'y, Dep't of Corr.*, 347 F. App'x 528, 531 (11th Cir. Oct. 1, 2009) (per

curiam) (unpublished) ("[W]e note that the reliability of the affidavits is called into question because all of these affidavits were presented more than ten years after the murder and roughly eight years after Milton's trial and that in most cases, as the district court noted, the affiants were aware of the alleged facts to which they now attest before Milton's trial. A reasonable explanation for this delay has not been presented. At most, some affiants noted that they did not wish to 'get involved.' *See Schlup,* 513 U.S. at 332, 115 S.Ct. at 869 (noting in context of request for an evidentiary hearing on an actual-innocence claim that 'the court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence').  []Considering the submissions more closely, we conclude that the affidavits are not sufficient to satisfy the threshold showing of actual innocence…The reliability of the affidavits of Roberts, Murphy, and Brown are all called into question because Roberts and Brown are either friends with Milton or his family and Murphy is Roberts's cousin."); *Haouari,* 510 F.3d at 353 ("[S]uspicions are even greater when, as here, the recanting witness is one who was involved in the same criminal scheme and, having received the benefit of his cooperation agreement, now sits in jail with nothing to lose by recanting. *See Newman*[ *v. United States*]*,* 238 F.2d [861,] 862[ (5th Cir. 1956)] (noting that a new trial will not automatically be granted based on the affidavits of recanting co-conspirators because 'frequently [the affiants] who, as participants, co-conspirators, or actors in the criminal activity initially charged, might from a variety of base motives, or importunities, be impelled, by recantation, to come to the

aid of a person whose conviction has been brought about by their testimony').");
*Strayhorn*, 718 F. Supp. 2d at 874 ("Furthermore, it is highly suspicious that the recantation came years after Richey had received the supposed benefit from testifying against petitioner—leniency with respect to his own crimes—and had nothing to lose by recanting." (citing *Tirado v. Senkowski,* 367 F. Supp. 2d 477, 489 (W.D.N.Y. 2005) ("Black's affidavit, signed *after* he had received a modification in his sentence and completed his prison terms, is inherently unworthy of belief."))).

Finally, even discounting Smith's trial testimony, Taite has presented no evidence that McCaskey has similarly recanted, and his testimony linked Taite to a number of guns that were stolen from the burglarized home. Thus, Taite has not sufficiently shown it is more likely than not that **no** reasonable juror would have convicted him in the light of the new evidence.

In sum, Taite's habeas petition is time-barred under AEDPA, and Taite has not demonstrated that he is entitled to either equitable tolling of the limitations period or to the equitable exception of "actual innocence." Accordingly, the undersigned finds that Taite's habeas petition is due to be **DISMISSED**.[23]

---

[23]     The Office of the Attorney General of Alabama, in particular through Assistant Attorney General Jean A. Webb (formerly Jean Therkelsen), has caused unnecessary delay in this matter in its role as counsel for the Respondent in this action. In the initial response to Taite's habeas petition (Doc. 62) (which the Respondent was granted a 21-day extension to file (*see* Docs. 60, 61)), the Respondent argued only that Taite's petition be dismissed as time-barred under AEDPA's one-year statute of limitations but failed, in contravention of this Court's service order (Doc. 34), to submit any of the relevant state court records or "a procedural history from which the Court can determine the applicability of 28 U.S.C. § 2244(d)." The only records submitted by the Respondent's counsel in their initial Answer pertain to Taite's 2009 proceedings to have his sentence reduced based entirely on state law grounds, an issue that was in no way relevant to helping the Court ascertain whether Taite's present habeas petition was time-barred. Despite having been granted an extension of time to answer, and despite having been expressly cautioned that

### D.      Certificate of Appealability

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court."  28 U.S.C.A. § 2253(c)(1)(A); *Sawyer v. Holder*, 326 F.3d 1363, 1364 n.3 (11th Cir. 2003) ("Based on the statutory language of 28 U.S.C. § 2253(c)(1), state prisoners proceeding under § 2241 must obtain a COA to appeal.") "A certificate of appealability may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.' "  *Spencer v. United*

---

"under the procedure governing habeas corpus actions, the obligation to come forward with the state court record is squarely upon the respondent, not upon the petitioner[,]"  (Doc. 34 at 3 (citing *Bundy v. Wainwright*, 808 F.3d 1410, 1415 (11th Cir. 1987)), the Respondent's counsel simply shrugged off their responsibilities to produce with the trite excuse that "[t]his office no longer has the records pertaining to Taite's direct appeal."  (Doc. 62 at 2). No attempt was made to explain why such records could not be otherwise obtained.  *See* Rule 5(c) of the Rules Governing § 2254 Cases in the United States District Courts.

Because of this dearth of supporting documentation, the undersigned was unable to address the sole contention – timeliness under AEDPA – raised in the Respondent's initial Answer; therefore, the undersigned ordered the Respondent to file a supplement to its Answer that contained adequate evidence and argument to support this contention.  (*See* Doc. 80).  The undersigned expressly noted that records from Taite's Clarke County case had been accessed through alacourt.com and that "it appear[ed] from the state circuit court docket that the Petitioner filed several petitions for post-conviction relief, the first as early as 2001."  (*Id.* at 3).

After being granted an additional two weeks to respond (pursuant to a motion filed <u>after</u> the original deadline to supplement had passed) (*see* Docs. 81, 82), the Respondent's counsel filed their supplemental Answer, which again failed to provide either a sufficient procedural history or all relevant records to support the Respondent's time-bar defense. Specifically, the Respondent skipped straight from the conclusion of Taite's direct appeal to his 2006 Rule 32 proceedings, completely bypassing Taite's 2001-04 Rule 32 proceedings, despite the record of those proceedings being readily available on the public docket of Taite's Clarke County action (as evidenced by the undersigned's ability to retrieve them). Indeed, the supplemental Answer included a (blurry) copy of the docket sheet from Taite's Clarke County action (Doc. 83-6 at 1 – 31) indicating that Taite had filed numerous motions from 2001 to 2004.  The undersigned cannot discount the possibility that this was a tactical move by the Respondent's counsel to bolster their contentions of untimeliness under § 2244(d)(1)(A) by making it appear that much more time had passed between the conclusion of Taite's direct appeal and his commencement of state collateral review.

*States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) (quoting 28 U.S.C. § 2253(c)(2)).   However, "a COA does not require a showing that the appeal will succeed." *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases in the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."), the undersigned **RECOMMENDS** that Taite be **DENIED** a Certificate of Appealability in this action.   Where, as here, a habeas petition is being denied on procedural grounds without reaching the merits of the underlying constitutional claim(s), "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).   *See also Miller-El*, 537 U.S. at 336 ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether  (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)).).   "A prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 338 (quotations omitted).

The undersigned finds that reasonable jurists would not find it debatable whether this Court is correct in ruling that Taite's habeas petition is time-barred under AEDPA.   Moreover, Taite has not made a substantial showing of the denial of a

constitutional right.   Accordingly, Taite is not entitled to a Certificate of Appealability for his petition.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by petitioner, he may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.  *See, e.g.*, *Brightwell v. Patterson*, No. CA 11-0165-WS-C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011), *certificate of appealability denied* (11th Cir. Oct. 11, 2011 (Hull, J.)); *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report & recommendation adopted*, 2010 W: 3943699 (N.D. Oct. 5, 2010).

### E.      Appeal *In Forma Pauperis*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."  28 U.S.C. § 1915(a)(3).  A district court's finding "that an appeal would not be in good faith because no certificate of appealability had been issued . . . is not enough to explain why the appeal on the merits would not be in good faith, because the standard governing the issuance of a certificate of appealability is not the same as the standard for determining whether an appeal is in good faith. It is more demanding."  *Walker v. O'Brien*, 216 F.3d 626, 631 (7th Cir. 2000).

> A party demonstrates good faith by seeking appellate review of any issue that is not frivolous when examined under an objective standard.

> *See Coppedge v. United States,* 369 U.S. 438, 445, 82 S. Ct. 917, 921, 8
> L. Ed. 2d 21 (1962). An issue is frivolous when it appears that "the
> legal theories are indisputably meritless." *Carroll v. Gross,* 984 F.2d
> 392, 393 (11th Cir. 1993) (citations omitted). In other words, an IFP
> action is frivolous, and thus not brought in good faith, if it is *860
> "without arguable merit either in law or fact." *Bilal v. Driver,* 251 F.3d
> 1346, 1349 (11th Cir. 2001). More specifically, "arguable means
> capable of being convincingly argued." *Sun v. Forrester,* 939 F.2d 924,
> 925 (11th Cir. 1991) (internal quotations and citations omitted).
> Nevertheless, where a "claim is arguable, but ultimately will be
> unsuccessful," it should be allowed to proceed. *Cofield v. Ala. Pub.
> Serv. Comm'n,* 936 F.2d 512, 515 (11th Cir. 1991).

*Ghee v. Retailers Nat. Bank*, 271 F. App'x 858, 859-60 (11th Cir. 2008) (per curiam)

(unpublished).

Having given careful consideration to the arguments and issues raised, and

upon consideration of the foregoing analysis, the undersigned **RECOMMENDS** the

Court certify that any appeal by Taite in this action would be without merit and

therefore not taken in good faith, and, accordingly, find that Taite is not entitled to

appeal *in forma pauperis.*

## IV.    Conclusion and Recommendations

In accordance with the foregoing analysis, the undersigned **RECOMMENDS**

that Taite's operative Petition for Writ of Habeas Corpus by a Person in State

Custody under 28 U.S.C. § 2254 (Doc. 27), be **DISMISSED** as time-barred, that

judgment be entered accordingly in favor of the Respondent, and that Taite be

found not entitled either to a Certificate of Appealability or to appeal *in forma

pauperis.*

## V.   <u>Additional Orders and Directives</u>

In contravention of the Court's previous Orders restricting Taite from filing anything unless expressly allowed, Taite has continued to submit numerous filings with the Court, which the Clerk of Court has held without docketing.  Despite the prohibition, the undersigned has reviewed each of these filings and concludes that none warrant any relief or affect the recommendations made herein.  To ensure a complete record of these proceedings, the Clerk of Court is **DIRECTED** to add those documents to the docket of this action in a <u>single</u> docket entry.

This Report and Recommendation having been submitted, Taite is hereby permitted to file objections, as explained below.  **Such objections must be limited to a single document containing any and all argument Taite believes necessary to adequately object.**  Multiple or duplicative filings made in response to this Order will be stricken at the Court's discretion.

Finally, for the reasons explained previously in the Court's Order dated and entered March 24, 2014 (Doc. 56), <u>after he files his objections as permitted above</u>, Taite is again **PROHIBITED** from submitting any filings in this action of any nature, including by motion, notice, affidavit or otherwise, unless the Court expressly permits otherwise.  Any filings made by Taite in contravention of this Order shall be held in the Clerk's office without being entered in the docket/record of this action until further order of the Court at the conclusion of the case.

## VI.   <u>Notice of Right to File Objections</u>

A copy of this report and recommendation shall be served on all parties in the

manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

     **DONE and ORDERED** this the 28th day of June 2015.

                    */s/ Katherine P. Nelson*
                    **KATHERINE P. NELSON**
                    **UNITED STATES MAGISTRATE JUDGE**